IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No. 7:24-cv-00004

| | | |
|---|---|---|
| MORAG BLACK POLASKI; SHAWANA ALMENDAREZ; and NORTH CAROLINA JUSTICE FOR ALL PROJECT, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Brief in Support of Motion to |
| v. | ) | Dismiss Pursuant to Fed. R. |
| | ) | Civ. P. 12(b)(1) & (6) |
| JOSH STEIN, in his official capacity as Attorney General of North Carolina, | ) ) | |
| | ) | |
| Defendant. | ) | |

## **INTRODUCTION**

Plaintiffs wish to practice law without a license. They ask this court to forbid

the North Carolina Attorney General from enforcing North Carolina's unauthorized

practice of law statutes and regulations on First Amendment grounds. But the

Attorney General does not enforce the unauthorized practice of law statutes; those

powers are exclusively granted to other governmental actors. This flaw both

eliminates Plaintiffs' standing and renders the Attorney General immune by virtue

of the Eleventh Amendment. In addition to this jurisdictional defect, Plaintiffs'

theory also fails on the merits. Plaintiffs contend that the ordinary regulation of

legal services violates the First Amendment's Free Speech Clause. As the Fourth

Circuit has already held, it does not. Capital Associated Industries, Inc. v. Stein,

922 F.3d 198, 207-10 (4th Cir. 2019). For these reasons, Plaintiffs' claim should be

1

dismissed for lack of subject-matter jurisdiction or, alternatively, for failure to state a claim upon which relief may be granted.

## STATEMENT OF FACTS

In relevant part, Plaintiffs allege as follows:

The three Plaintiffs are two individual residents of Jacksonville and Kannapolis, and an unincorporated, nonprofit association headquartered in Raleigh, North Carolina. Compl. ¶¶10-12. Defendant is the North Carolina Attorney General, sued in his official capacity. Compl. ¶13.

Plaintiffs allege that there is a meaningful gap in access to justice caused by the lack of available and affordable legal services in North Carolina, and nationwide. Compl. ¶¶14-35. Plaintiffs would try to fill some of that gap in the marketplace. Compl. ¶¶36-39. Two states have experimented with altering their licensing regimes by creating limited licenses for nonattorneys in an effort to increase the availability of licensed legal services. Compl. ¶42.

The North Carolina Justice For All Project ("JFAP"), has submitted legislative and regulatory proposals to create such a limited license for certain nonlawyers to be exempted from the regulation of unauthorized practice of law; it has advocated for these changes with the North Carolina Supreme Court, State Bar, and General Assembly. Compl. ¶¶41-50. JFAP's advocacy has not yet succeeded, and that is why they have filed this suit. Compl. ¶¶51, 60.

Plaintiffs allege that they intend to offer legal advice to unrepresented persons to assist in completing form pleadings that have been crafted by the North

Carolina Administrative Office of the Courts for use in certain civil lawsuits such as probate estates, evictions, divorces, and domestic violence orders of protection. Compl. ¶¶52-83. JFAP (through its members) would do so for free and the individual plaintiffs would also do so for a fee. Compl. ¶¶84-92. Though they would offer legal advice on drafting pleadings, they "would not hold themselves out as attorneys." Compl. ¶92. According to the State Bar, Plaintiffs' provision of these proposed services, including assisting with drafting of pleadings to unrepresented persons, would constitute the unauthorized practice of law. Compl. ¶¶93-115.

The State Bar summarizes the regulatory enforcement regime for unauthorized practice of law as:

> The North Carolina State Bar has the authority by statute to investigate allegations of unauthorized practice of law as well as the District Attorney. The State Bar may seek injunctive relief. District attorneys may prosecute charges of unauthorized practice of law as a class 1 misdemeanor. (Compl. Ex. B at 4).

Plaintiffs allege that they would practice law as they describe if they did not "face a credible threat of prosecution" under N.C. Gen. Stat. § 84-7. Compl. ¶¶117-128. Plaintiffs also allege that if it were not for "North Carolina's UPL statutes and regulations," they would "commit significant resources to giving free legal advice," and "offer . . . legal advice through their own freelance business structures." Compl. ¶¶129-130.

## ARGUMENT

Plaintiffs lack standing because they have not plausibly alleged that the Attorney General will prosecute them for unauthorized practice of law. While a

3

credible threat of prosecution may confer standing in a First Amendment challenge, the Attorney General cannot credibly threaten to initiate prosecution for unauthorized practice of law; only a district attorney can in North Carolina. Additionally, a district attorney or the North Carolina State Bar may seek to enjoin Plaintiffs from unauthorized practice of law; the Attorney General cannot. For the same reason, Plaintiffs have also sued the wrong state official. Because there is no connection between the Attorney General and the enforcement of these challenged statutes and regulations, the Eleventh Amendment requires dismissal.

Finally, even if the Court had jurisdiction, the factual allegations in Plaintiffs' complaint fail to state a claim upon which relief may be granted. Consistent with Supreme Court First Amendment jurisprudence, the Fourth Circuit Court of Appeals has already held that North Carolina's unauthorized practice of law statutes and regulations do not violate the Free Speech Clause.

I. **PLAINTIFFS LACK STANDING BECAUSE THEY FACE NO CREDIBLE THREAT OF PROSECUTION OR CIVIL ENFORCEMENT FOR UNAUTHORIZED PRACTICE OF LAW BY THE ATTORNEY GENERAL.**

Federal courts must dismiss a claim for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) where the plaintiffs lack standing. Ali v. Hogan, 26 F.4th 587, 596 (4th Cir. 2022). Standing must be established from the moment a complaint is filed. Id. The complaint's factual allegations relating to standing are taken as true, but the legal conclusions are not. Id. Standing requires (1) an injury in fact: a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical; (2) causation: a fairly traceable connection between the

4

injury and the complained-of conduct of the defendant, as opposed to the result of the independent action of some third party not before the court, and (3) redressability: a likelihood that the requested relief will redress the alleged injury. McBurney v. Cuccinelli, 616 F.3d 393, 402 (4th Cir. 2010). The party invoking federal court jurisdiction bears the burden of establishing these elements. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

Plaintiffs cannot establish any of these elements for one common reason: the North Carolina Attorney General does not, and indeed cannot, enforce the unauthorized practice of law statutes and regulations against Plaintiffs civilly, or indict them criminally for the unauthorized practice of law. North Carolina's unauthorized practice of law statutes provide criminal and civil remedies, but they are expressly and exclusively assigned to district attorneys and the State Bar, not the Attorney General.

> The district attorney . . . shall, upon the application of any member of the Bar, or of any bar association, of the State of North Carolina, bring such action . . . to enjoin [the unauthorized practice of law], and it shall be the duty of the district attorneys . . . to indict any person . . . upon the receipt of information of the [unauthorized practice of law].

N.C. Gen. Stat. § 84-7. The North Carolina State Bar is an administrative agency created by statute. N.C. Gen. Stat. § 84-15. It has the power to seek injunctive relief to enjoin the unauthorized practice of law, independent of the district attorneys. N.C. Gen. Stat. § 84-37. While district attorneys can bring an action to enjoin unauthorized practice only "upon the application" of a North Carolina

attorney or bar association, N.C. Gen. Stat. § 84-7, the State Bar may do so based upon information from "any person." N.C. Gen. Stat. § 84-37(a).[1]

Within its regulatory role, the State Bar has created a standing committee to investigate and discipline the unauthorized practice of law, 27 NCAC 1A .0701(4), and that committee may pursue civil relief in administrative proceedings or in court, 27 NCAC 1D .0206 & .0208, using its own appointed counsel, 27 NCAC 1D .0207, who must practice law exclusively for the State Bar, 27 NCAC 1D .0204. The State Bar has the exclusive power to create the rules and regulations that Plaintiffs challenge, subject only to a caveat that the Chief Justice of the North Carolina Supreme Court may decline to publish such rules "which in the opinion of the Chief Justice are inconsistent with this Article." N.C. Gen. Stat. §§ 84-21, 23.

Plaintiff cannot sue the Attorney General to enjoin him from pursuing civil remedies for the unauthorized practice of law because the Attorney General has not been delegated that authority by either statute or through North Carolina's constitution. The complaint seeks an injunction barring "Defendant's enforcement of the challenged statutes, regulations, policies, and practices," Compl. ¶¶145, 162, but the regulations, policies, and practices identified are those of the North Carolina State Bar, not the North Carolina Attorney General. Plaintiffs might have standing against the State Bar for the same claim. See 360 Drone Services LLC v. Ritter,

---

[1] The Attorney General is necessarily a member of the State Bar who can make such an application to a district attorney, N.C. Const. Art. III §7(7) ("Only persons duly authorized to practice law in the courts of this State shall be eligible for appointment or election as Attorney General."). But that puts him on no different footing than every other attorney in North Carolina.

No. 5:21-cv-137-FL, 2023 WL 2759032, at *5 (E.D.N.C. March 31, 2023) (holding plaintiff had standing in First Amendment claim against North Carolina Board of Examiners for Engineers and Surveyors), appeal docketed, No. 23-1472 (4th Cir. May 1, 2023). The Attorney General has no role in the State Bar's regulation of the unauthorized practice of law. Nor does the Attorney General have the power to seek such an injunction even at the request of a District Attorney. State v. Felts, 79 N.C. App. 205, 209-10, 339 S.E.2d 99, 101-02 (1986).[2] Plaintiffs may face a credible threat that a district attorney or the State Bar might seek to enjoin Plaintiffs from engaging in the unauthorized practice of law that they intend to undertake; but such threats do not give Plaintiffs standing to sue the Attorney General.

While their complaint only obliquely refers to the civil remedies for unauthorized practice of law, Plaintiffs repeatedly assert that they are injured by a "credible threat of prosecution by Defendant." Compl. ¶¶117-127. To be sure, a credible threat of criminal prosecution – even where the State disclaims such a prosecution – may give rise to an injury in fact sufficient to confer standing in a First Amendment challenge. E.g., North Carolina Right to Life, Inc. v. Bartlett, 168 F.3d 705, 710-11 (4th Cir. 1999). But there is no credible threat of such a prosecution here. The Attorney General could not indict Plaintiffs for unauthorized practice of law; that specific power to indict is expressly and exclusively reserved to the district attorneys.

---

[2] In recognition of this principle, the North Carolina General Assembly has occasionally expressly granted power to the Attorney General to seek injunctive relief within the criminal laws. E.g., N.C. Gen. Stat. § 14-291.2(c).

In North Carolina, the Attorney General is not empowered to decide who to bring criminal charges against; that power rests in the exclusive discretion of the district attorneys. State v. Camacho, 329 N.C. 589, 594-95, 406 S.E.2d 868, 871 (1991). Though the Attorney General has the power to advise or assist in prosecutions, these powers are expressly preconditioned on a district attorney's request. Id. (citing N.C. Gen. Stat. §§ 114-2(4), 11.6).[3] Additionally, the unauthorized practice of law statute exclusively grants the power to indict for misdemeanor unauthorized practice of law to district attorneys, a limit not generally present in North Carolina's criminal statutes. N.C. Gen. Stat. § 84-7 provides that "[I]t shall be the duty of the district attorneys . . . to indict any person, corporation, or association of persons upon the receipt of information of the [unauthorized practice of law]." The North Carolina Supreme Court has held that "[t]his statute unambiguously states that the process of seeking criminal sanctions for the unlawful practice of law are under the exclusive control of district attorneys." Disciplinary Hearing Commission v. Frazier, 354 N.C. 555, 559, 556 S.E.2d 262, 264 (2001).

The district attorneys who are relevant to Plaintiffs' claims of possible prosecution are not parties to this case. Consequently, even if Plaintiffs were to receive the permanent injunction they request, it would not prevent those district

---

[3] Plaintiffs' complaint accurately-but-incompletely describes the North Carolina Attorney General as "charged with . . . advising district attorneys throughout the state," Compl. ¶ 13, but the statutory grant of his power and obligation "[t]o consult with and advise the prosecutors," is expressly limited to the instances "when requested by them," N.C. Gen. Stat. § 114-2(4).

8

attorneys from indicting Plaintiffs.  Conversely, if Plaintiffs began their unauthorized practice of law now, the Attorney General could not indict them.  The only possible roles that the Attorney General could play in such prosecutions would be that after a district attorney indicted Plaintiffs, the Attorney General could represent the State on direct appeal from a conviction, N.C. Gen. Stat. § 114-2(1), or provide advice or assistance in a prosecution, but only if that assistance is specifically requested by the district attorney, N.C. Gen. Stat. §§ 114-2(4), 114-11.6.  Even if the district attorneys sought the Attorney General's advice in deciding whether to indict for unauthorized practice of law, that advice would have no binding effect on the district attorneys.  Because the Attorney General cannot indict Plaintiffs, Plaintiffs have not plausibly pleaded a credible threat that the Attorney General will prosecute them to establish the injury-in-fact necessary for standing.

Moreover, any credible threat of prosecution is not traceable to the Attorney General.  An injury that is not caused by the defendant does not confer standing.  Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26. 41-42 (1976).  "To satisfy the causation requirement of standing, a plaintiff's injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'"  Jacobson v. Florida Secretary of State, 974 F.3d 1236, 1253 (11th Cir. 2020) (quoting Lujan, 504 U.S. at 560).  Where the plaintiff's alleged injury is caused by the independent discretionary decision of a nonparty to the suit, the court lacks jurisdiction because it is not traceable to the defendant, and relatedly, not redressable by the court in the absence of that

9

nonparty.  Frank Krasner Enterprises, Ltd. v. Montgomery County, 401 F.3d 230, 236 (4th Cir. 2005).  "[W]here multiple actors are involved, a plaintiff can establish causation only if the defendant's conduct had a 'determinative or coercive effect upon the action of someone else.'"  Alvarez v. Becerra, No. 21-2317, 2023 WL 2908819, at *3 (4th Cir. Apr. 12, 2023) (quoting Bennett v. Spear, 520 U.S. 154, 169 (1997).  "When a defendant has no role in enforcing the law at issue, it follows that the plaintiff's injury allegedly caused by that law is not traceable to the defendant." Disability Rights South Carolina v. McMaster, 24 F.4th 893, 902 (4th Cir. 2022).

The Attorney General's limited and tangential authority relating to criminal prosecution for unauthorized practice of law does not meet the requirement of traceability.  In Jacobson, the Secretary of State was named as a defendant, but the claimed injury (listing candidates in a particular order on the ballot) was statutorily assigned to other officials who were not parties.  Jacobson, 974 F.3d at 1253.  While the Secretary provided those officials with the names of candidates to be listed on the ballot, the secretary had no power to decide what order they were listed in.  Id. at 1253-54.  Here, the Attorney General might provide advice or defend a conviction on appeal, but he may only do so if a district attorney asks him to advise, or first indicts and prosecutes such a charge to conviction.  Put simply, the North Carolina Attorney General cannot cause Plaintiffs to be prosecuted – thus any credible threat of prosecution Plaintiffs face from district attorneys is not traceable to the Attorney General.

Furthermore, were the injuries Plaintiffs claim –chilled speech due the threat of criminal prosecution and deciding not to allocate resources to engage in the unauthorized practice of law– traceable to the Attorney General, Plaintiffs would still lack standing because they can "not show[ ] that this injury is likely to be redressed by judicial relief." Haaland v. Brackeen, 599 U.S. 255, 292 (2023) (internal quotation omitted). In Haaland, plaintiffs lacked standing for their equal protection challenge because the defendants did not include the governmental actors implementing the challenged statute, and those actors would not have been bound by the injunction or declaratory judgment plaintiffs sought. Id. at 293-94. The injunction that Plaintiffs seek would not prevent the State Bar or a district attorney from seeking to enjoin Plaintiffs' unauthorized practice of law or forbid a district attorney from indicting, trying, and convicting Plaintiffs for the same.

Standing by or against governmental parties often requires this kind of parsing of the statutory and regulatory regime to determine the powers of different governmental actors. See Biden v. Nebraska, 600 U.S. ----, 143 S. Ct. 2355, 2365-68 (2023). Where the wrong governmental party is sued, both traceability and redressability elements of standing are lacking as against the named official. Disability Rights South Carolina, 24 F.4th at 901. Other attorneys general have very different powers in policing the unauthorized practice of law. See e.g., Upsolve, Inc. v. James, 604 F. Supp. 3d 97, 105 (S.D.N.Y. 2022), appeal docketed, No. 22-1345 (2nd Cir. June 22, 2022) (noting the New York Attorney General may bring a civil or criminal action based on unauthorized practice of law under New

11

York statute).  The Attorney General's role is far more limited by virtue of North Carolina's state constitutional design and the unique role of the State Bar in policing the unauthorized practice of law.  The last time a First Amendment challenge was brought against North Carolina's unauthorized practice of law statutes, the relevant district attorneys were named as defendants (and the North Carolina State Bar intervened in the suit), so there was little question of that plaintiff's standing.  Capital Associated Industries, Inc., 922 F.3d at 204 n.2.  Because the relevant district attorneys were named as defendants there and could credibly threaten prosecution, CAI had standing; in their absence here, Plaintiffs lack standing and their complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## II.    Eleventh Amendment Immunity Bars Plaintiffs Claims.

Similarly, though not identical to the analysis of standing, Eleventh Amendment immunity bars this claim against the Attorney General.  By default, a State cannot be sued except where its sovereign immunity has been waived or an exception to that sovereign immunity exists.  E.g., Hutto v. South Carolina Retirement Sys., 773 F.3d 536, 542-43 (4th Cir. 2008).  The most prominent and well-developed such exception is that state officials can be sued to enjoin their enforcement of an unconstitutional statute.  Ex parte Young, 209 U.S. 123 (1908).  However, where claims do not fit within the Ex parte Young exception, the Eleventh Amendment bars the claim against that official.  Hutto, 773 F.3d at 551.  Where a

state official is protected by the Eleventh Amendment, both he and the claim

against him must be dismissed.  <u>Doyle v. Hogan</u>, 1 F.4th 249, 256 (4th Cir. 2021).[4]

Where a state law is challenged as unconstitutional, a governmental

defendant must have some connection with the enforcement of the act in order to

properly be a party to the suit.  <u>S.C. Wildlife Fed'n v. Limehouse</u>, 549 F.3d 324, 332

(4th Cir. 2008).  "Primarily, th[is special relation] requirement has been a bar to

injunctive actions where the relationship between the state official sought to be

enjoined and the enforcement of the state statute is significantly attenuated."  <u>Id.</u> at

332-33.  "Thus, the [state official's] connection . . . need not be *qualitatively* special;

rather, special relation under <u>Ex parte Young</u> has served as a measure of *proximity*

*to* and *responsibility for* the challenged state action.  This requirement ensures that

a federal injunction will be effective with respect to the underlying claim."  <u>Id.</u> at

333 (emphasis in original).

The "some connection" language cannot be taken to the extreme, or else the

North Carolina Secretary of the Department of Adult Corrections can be sued to

challenge any criminal law and the General Assembly and Governor could both be

sued in any challenge to any North Carolina statute.  <u>See Waste Management</u>

<u>Holdings, Inc. v. Gilmore</u>, 252 F.3d 316, 331 (4th Cir. 2001).  Crucially, it also does

not make attorneys general proper defendants in all challenges to state law.

---

[4] Such motions are typically analyzed under Fed. R. Civ. P. 12(b)(1).  <u>E.g.</u>, <u>Wicomico</u>
<u>Nursing Home v. Padilla</u>, 910 F.3d 739, 746 (4th Cir. 2018).  However, because the
nature of Eleventh Amendment immunity does not squarely fit within subject-
matter jurisdiction, Defendant's motion to dismiss for Eleventh Amendment
immunity is also brought under Fed. R. Civ. P. 12(b)(6).  <u>See</u> <u>Hutto</u>, 773 F3d at 545.

13

McBurney v. Cuccinelli, 616 F.3d 393, 400 (4th Cir. 2010). "[T]he officer sued must be able to enforce, if he so chooses, the specific law the plaintiff challenges." Doyle, 1 F.4th at 255. For this reason, the applicable principles in analyzing traceability for standing argued above and immunity under the Eleventh Amendment substantially overlap. Disability Rights of South Carolina, 24 F.4th at 901.

In McBurney, the Virginia Attorney General was dismissed on Eleventh Amendment immunity where the challenged statute expressly assigned its enforcement to the local elected prosecutors in Virginia. 616 F.3d at 400. Here too, the unauthorized practice statutes expressly assign enforcement of the criminal unauthorized practice of law statutes to district attorneys, a feature absent from the general criminal laws of North Carolina. In Doyle, the Maryland Attorney General was dismissed on Eleventh Amendment immunity where the challenged statute was enforced by a licensing board – one the Attorney General was empowered to advise and represent in the board's enforcement proceedings, but without any control over the board's enforcement decisions. 1 F.4th at 256. Any possible responsibility that the North Carolina Attorney General has for enforcing the unauthorized practice of law criminal statute is wholly derivative of, and dependent upon, the independent discretionary decision of a district attorney; and the Attorney General has no control over the actions brought by the State Bar to enjoin the unauthorized practice of law, nor does he even represent the State Bar in such actions.

Ex Parte Young itself is instructive. In order to be subject to suit and injunction against enforcing or regulating under Ex Parte Young, the named state official must have the power to enforce the challenged statute or participate in the regulatory conduct. The decision rests in part on the Supreme Court's review of the Minnesota Attorney General's connections to enforcement of the challenged act – that he had the statutory and common law powers to "institute, conduct, and maintain all suits and proceedings he might deem necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights, and that there were no statutory restrictions in that state limiting the duties of the attorney general in such case." Ex Parte Young, 209 U.S. 123, 161, 28 S. Ct. 441, 454. The statue at issue related to the powers of the state's railroad commission, and "provided that the attorney general shall be *ex officio* attorney for the railroad commission, and it is made his duty to institute and prosecute all actions which the commission shall order brought, and shall render the commissioners all counsel and advice necessary for the proper performance of their duties." Id. To pierce Eleventh Amendment immunity under Ex Parte Young, the connection must be strong enough that enjoining the defendant would necessarily have the effect of actually preventing the statute from being enforced against the plaintiff.

Plaintiffs' sole allegation in this regard is that the Attorney General "is the State's authorized legal representative charged with defending the interests of the State in all criminal and civil suits, and with advising district attorneys throughout the state." Compl. ¶13. "As the Court explained in Ex parte Young, if the

15

'constitutionality of every act passed by the legislature could be tested by a suit against the . . . attorney general, based upon the theory that . . . as attorney general, [he or she] might represent the state in litigation involving the enforcement of its statutes,' it would eviscerate 'the fundamental principle that [States] cannot, without their assent, be brought into any court at the suit of private persons.'" Hutto, 773 F.3d at 550 (cleaned up).  As the Fourth Circuit held in Doyle, an attorney general's "limited authority" to represent a party, "with no power to make the decision about whether to bring the action in the first place, does not create the requisite connection to the enforcement of [the challenged statute] to overcome sovereign immunity."  1 F.4th at 256.  Indeed, the Maryland Attorney General could "in some cases . . . 'present a case on behalf of the Board [charged with the enforcing the challenged statute]."  Id.  Here, the North Carolina Attorney General has even less connection to the unauthorized practice of law statutes, as he does not prosecute cases for the State Bar nor choose the cases district attorneys indict.

As explained in arguing Plaintiffs' lack of standing, as a matter of law, the North Carolina Attorney General lacks the authority to file an injunction or seek an indictment to stop Plaintiffs from committing the unauthorized practice of law.  The Attorney General does have the authority to represent state agencies, like the North Carolina State Bar, in a civil suit brought *against* the Bar, N.C. Gen. Stat. § 114-2(2), but not the authority to decide which cases the Bar independently pursues.  The Attorney General can represent the State in a criminal appeal, provide advice, or assist in a prosecution, but initiating that prosecution rests solely

in the discretion of the district attorney, not the Attorney General. Where requested, his advice is only that, not authoritative command.

Notably, the unauthorized practice of law statute differs from most criminal statutes in that it expressly provides for the district attorney to bring both the misdemeanor indictment and seek injunctive relief, the latter of which cannot be transferred to the Attorney General's Special Prosecution Division, Felts, 79 N.C. App. at 209-10, 339 S.E.2d at 101-02, and the former has been held by North Carolina's courts to impose a duty exclusively on North Carolina's district attorneys. Frazier, 354 N.C. at 559, 556 S.E.2d at 264. It is unclear why Plaintiffs named the Attorney General, rather than district attorneys (who are expressly empowered by the very statute Plaintiffs challenge), N.C. Gen. Stat. § 84-7, or the State Bar (when Plaintiffs' allegations depend almost exclusively on the State Bar's conduct, statements, and regulatory powers), Compl. ¶¶100-103, 111, Exhibit A, B. The rationale of a rule for requiring a sufficient connection for an Ex parte Young action is to "prevent[ ] parties from circumventing a State's Eleventh Amendment immunity." Here, Plaintiffs have named the Attorney General as a stand-in for other state agents and agencies that he does not control in an effort to treat the Attorney General as the equivalent of the state itself – this is precisely what the Eleventh Amendment forbids.

Accordingly, the North Carolina Attorney General lacks a sufficient connection to the enforcement of the statutes and regulations Plaintiffs have sued to

enjoin. Thus, the Attorney General should be dismissed because the Eleventh Amendment renders him immune from this suit.

## III. THE COMPLAINT FAILS TO PLAUSIBLY PLEAD A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Well-pleaded facts are taken as true and reasonable factual inferences drawn in plaintiff's favor, disregarding allegations "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (citations and quotation omitted). "[A]bsent specific supporting facts . . . conclusory allegations are 'not entitled to be assumed true.'" Nero v. Mosby, 890 F.3d 106, 120 n.4 (4th Cir. 2018) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)).

The regulation of the practice of law is the paradigmatic example of regulating conduct consistent with the Free Speech Clause. Indeed, regulation of the legal profession "is a subject only marginally affected with First Amendment concerns." Ohralik v. Ohio State Bar Association, 436 U.S. 447, 459 (1978). "States may regulate professional conduct, even though that conduct incidentally involves speech." National Institute of Family and Life Advocates v. Becerra (NIFLA), 585 U.S. 755, 768 (2018) (citing Ohralik, 436 U.S. at 456).

Plaintiffs' claim here is squarely foreclosed by binding precedent. North Carolina's unauthorized practice of law statutes and regulations:

> fit within <u>NIFLA</u>'s exception for professional regulations that
> incidentally affect speech. The ban [on unauthorized practice of law] is
> part of a generally applicable licensing regime that restricts the
> practice of law to bar members . . . . [A]ny impact the [unauthorized
> practice of law] statutes have on speech is incidental to the overarching
> purpose of regulating who may practice law. . . . The [unauthorized
> practice of law] statutes don't target the communicative aspects of
> practicing law, such as the advice that lawyers may give to clients.
> Instead, they focus more broadly on the question of who may conduct
> themselves as a lawyer. Licensing laws inevitably have some effect on
> the speech of those who are not (or cannot be) licensed. But that effect
> is merely incidental to the primary objective of regulating the conduct
> of the profession.

<u>Capital Associated Industries, Inc.</u>, 922 F.3d at 207-08. Intermediate scrutiny

applies to analyze North Carolina's unauthorized practice of law statutes and

regulations. <u>Id.</u> "North Carolina's interest in regulating the legal profession to

protect clients is at least substantial," <u>id.</u> at 209, and the unauthorized practice

laws are drawn to reasonably fit that interest, <u>id.</u> at 209-10. This is true even when

the challenge is as applied to oral and written legal advice given out of court. <u>Id.</u> at

202 ("CAI would like to . . . answer questions about employment and labor law.").

In <u>Capital Associated Industries, Inc.</u>, the corporate plaintiff's challenge to North

Carolina's unauthorized practice of law statutes under the Free Speech Clause

failed where they intended to use licensed attorneys to provide legal advice. <u>Id.</u> at

203. Plaintiffs' identical challenge seeking to use unlicensed practitioners to

provide legal advice must also fail *a fortiori*. Indeed, the logic of <u>Capital Associated</u>

<u>Industries, Inc.</u> has been applied to uphold similar professional regulation of

conduct that incidentally burdens speech, even where the state's interests may be

Case 7:24-cv-00004-BO-BM   Document 14   Filed 02/26/24   Page 19 of 24

less weighty or the tailoring less narrow.  See 360 Drone Services LLC, 2023 WL 2759032, at *10-14.

Applying first principles would end in the same result even if Capital Associated Industries, Inc. did not foreclose debate.  To begin, regardless of the level of scrutiny applied, North Carolina has a compelling interest in protecting the public from inadequate, incorrect, or unscrupulous legal practice.  Goldfarb v. Virginia State Bar, 421 U.S. 773, 792 (1975); Ohralik, 436 U.S. at 460.  Capital Associated Industries, Inc., 922 F.3d at 209.  For longer than there has been an America, the practice of law has been regulated.  The Constitution itself draws a distinction between "counsel" and all laypeople.  U.S. Const. Amend VI.  North Carolina has a compelling interest both in protecting the public from unscrupulous or incompetent legal service provided to its citizens, and in the functioning of its own judicial branch, which depends in large part on the caliber of legal services provided to the litigants within it.

The prohibition on unauthorized practice of law is a regulation of conduct, not speech.  To start, regulation of the practice of law is content neutral, and does not target speech based on its communicative content or the viewpoint of the speaker.  See Reed v. Town of Gilbert, 576 U.S. 155, 163 (2015).  To be sure, the content must be legal advice – and therefore the practice of law – to come within the ambit of the unauthorized practice of law statutes.  But the Supreme Court has "consistently recognized that restrictions on speech may require some evaluation of the speech and nonetheless remain content neutral."  City of Austin v. Reagan Nat'l Advert. of

Austin, LLC, 142 S. Ct. 1464, 1473 (2022).  A regulation fails content neutrality only if it "discriminate[s] based on 'the topic discussed or the idea or message expressed.'" Id. at 1474 (quoting Reed, 576 U.S. at 171).  A speaker preference does not trigger strict scrutiny unless it "reflects a content preference," Barr v. American Ass'n of Pol. Consultants, Inc., 140 S. Ct. 2335, 2347 (2020) (quotation marks omitted).  The unauthorized practice statutes do not discriminate on that basis. There is no content preference here – the unauthorized practice of law statutes are agnostic on whether the legal service provided is good or bad or on any legal topic – they are only concerned with credentialing those with a right to offer legal services to the public.

Nor does North Carolina's unauthorized practice regime target communication itself, but rather who is permitted to provide legal services (one of which is advice).  While it is the unauthorized practice of law for a paralegal to independently analyze a client's case and advise the client on how to proceed without the supervision of an attorney, it is not unauthorized practice of law for the same paralegal to communicate the same advice at the direction of an attorney. That makes these statutes distinguishable from the kind that targets the communicative act itself.  See Holder v. Humanitarian Law Project, 561 U.S. 1, 27 (2010).  Though Capital Associated Industries, Inc. did not directly address Holder, other circuits have followed Capital Associated Industries, Inc. in upholding state regulation of professional conduct that incidentally burdens speech explicitly drawing a distinction with statutes that target communication and discriminate

21

based on content.  Brokamp v. James, 66 F.4th 374, 394 n.19 (2nd Cir. 2023);

Tingley v. Ferguson, 47 F.4th 1055, 1077 (9th Cir. 2022) ("because 'words can in

some circumstances violate laws directed not against speech but against conduct.'")

(quoting R.A.V. v. City of St. Paul, 505 U.S. 377, 389 (1992)); Del Castilo v.

Secretary, Florida Department of Health, 26 F.4th 1214, 1226 (11th Cir. 2022).

      In the history of the legal profession and the First Amendment, only one

court has adopted Plaintiffs' position, and that decision is pending on appeal in the

Second Circuit where Brokamp now likely controls the outcome.  Upsolve, Inc., 604

F.Supp.3d at 112-20.  That court was not bound by Capital Associated Industries,

Inc.; had it been bound by Fourth Circuit precedent, its holding would not have

been possible.[5]  Moreover, in concluding that New York's unauthorized practice of

law statutes regulate speech rather than conduct, Upsolve, Inc. turns on

distinguishing oral advice on how to complete a pleading with drafting the pleading.

604 F.Supp.3d at 112.  That distinction does not withstand meaningful analysis, nor

transform unauthorized practice statutes from regulations of conduct to regulations

of speech.  A doctor might diagnose a condition, inform a patient of the risks of

different treatment options, and, with the patient's consent, prescribe a particular

treatment – even one the patient can perform on his own.  Along the way, some

---

[5] Indeed, the decision incorrectly states that "none of" the many cases upholding
unauthorized practice of law statutes "have dealt with (1) an as applied-challenge to
an [unauthorized practice of law] statute where (2) a plaintiff sought to give pure
verbal speech."  604 F.Supp.3d at 113.  But CAI's as applied challenge to North
Carolina's unauthorized practice of law statutes based on their desire to offer legal
advice about labor and employment issues was exactly that.

speech occurs; but that does not change the nature of regulating the professional conduct for diagnosing, obtaining informed consent, or treatment. See Del Castillo, 26 F.4th at 1225-26.

There is not a meaningful difference, under the First Amendment or otherwise, in filling out a complaint form and in telling the client what to put in each blank. Indeed, the unauthorized practice of law statutes in North Carolina (as elsewhere) do not draw a distinction – both acts are the practice of law. See N.C. Gen. Stat. § 84-2.1(a). That is because the conduct of practicing law essentially consists not of communicating a legal concept, but of exercising legal acumen – applying legal knowledge and information to the particular facts of a client's case in an effort to achieve that client's goals. That is also, not coincidentally, the line drawn between "legal information," which a search engine might yield and never offends the unauthorized practice of law statutes, and "legal advice," which only a licensed attorney may offer.[6]

Plaintiffs' claim is part of a national raft of First Amendment challenges to the regulation of numerous professions. See e.g., Richwine v. Matuszak; No. 23-cv-370-HAB-SLC, 2023 WL 8747471 (N.D. Ind. Dec. 19, 2023 ), appeal docketed, No. 24-2081 (7th Cir. Jan. 19, 2024) (funeral directors); Chiles v. Salazar, No. 22-cv-02287-CNS-STV, 2022 WL 17770837, (D. Colo. Dec. 19, 2022), appeal docketed, No.

---

[6] JFAP alleges that one activity it has not done because of the threat of prosecution is to offer legal advice through an on-demand video library. Compl. ¶¶3, 80. It's hard to imagine how such videos would cross the line from legal information to legal advice as non-interactive video seems unlikely to provide advice based on specific information from a client about a particular case.

23-1002 (10th Cir. Jan. 1, 2023) (mental health counselors); <u>Hines v. Pardue</u>, No. 18-cv-155, 2023 WL 5254673 (S.D. Tex. Aug. 15, 2023), <u>appeal docketed</u>, No. 23-40483 (5th Cir. Aug. 21, 2023) (veterinarians); <u>360 Drone Services LLC</u>, 2023 WL 2759032, (E.D.N.C. March 31, 2023) (land surveyors).  A consequence of applying intermediate scrutiny is that these challenges may not all have the same outcome; different interests may have greater or less weight and different regulations may be more or less tailored.  "Because North Carolina has established a reasonable fit between its [unauthorized practice of law] statutes and a substantial government interest, the [unauthorized practice of law] statutes survive intermediate scrutiny." <u>Capital Associated Industries, Inc.</u>, 922 F.3d at 210.

## **CONCLUSION**

WHEREFORE, Defendant respectfully requests that the Court grant their motion to dismiss Plaintiffs' claims without prejudice for lack of standing and Eleventh Amendment immunity, or, in the alternative, with prejudice for failure to state a claim.

February 26, 2024. Respectfully submitted,
<u>/s/ *Carl Newman*</u>
Carl Newman
N.C. State Bar No. 52943
E-mail:  cnewman@ncdoj.gov
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602-0629
Telephone: (919) 716-0046
Fax: (919) 716-6759
*Attorney for Josh Stein, in his official capacity as Attorney General of North Carolina*