**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**

No.7:24-cv-00004-BO-BM

MORAG BLACK POLASKI; SHAWANA ALMENDAREZ; and NORTH CAROLINA JUSTICE FOR ALL PROJECT,

*Plaintiffs*,

v.

ERNIE LEE, in his official capacity as District Attorney for the 5th Prosecutorial District of the State of North Carolina; BENJAMIN R. DAVID, in his official capacity as District Attorney for the 6th Prosecutorial District of the State of North Carolina; NANCY LORRIN FREEMAN, in her official capacity as District Attorney for the 10th Prosecutorial District of the State of North Carolina; ASHLIE SHANLEY, in her official capacity as District Attorney for the 25th Prosecutorial District of the State of North Carolina; SPENCER B. MERRIWEATHER III, in his official capacity as District Attorney for the 26th Prosecutorial District of the State of North Carolina; and A. TODD BROWN, in his official capacity as President of the North Carolina State Bar and Chair of the Executive Committee of the North Carolina State Bar,

*Defendants*.

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION[1]

1. This First Amendment lawsuit challenges North Carolina's prohibition on the unauthorized practice of law ("UPL") as applied to pure legal advice. Plaintiffs are two North Carolina Certified Paralegals and the North Carolina Justice for All Project ("JFAP"), a nonprofit

[1] On February 26, 2024, Attorney General Josh Stein filed a motion to dismiss Plaintiffs' original Complaint. ECF No. 13. Plaintiffs file this First Amended Complaint as a matter of course. *See* Fed. R. Civ. 15(a)(1)(B).

organization founded in 2020 to expand access to justice in North Carolina. Both the individual plaintiffs and JFAP want to provide simple legal advice to North Carolinians about how to properly fill in common, court-created legal forms. But North Carolina's broad UPL prohibition makes it a crime for anyone to give legal advice—paid or unpaid—unless they are a fully licensed attorney.

2. The forms Plaintiffs want to help North Carolinians fill out, concerning simple legal matters such as summary ejectments, absolute divorces, and protective orders, are not complicated. The North Carolina Administrative Office of the Courts ("NCAOC") provides them online for pro se litigants to fill out themselves, by hand or through the website's interactive software. But the forms can still be confusing, and many pro se litigants filling out these forms would benefit from simple advice.

3. Unfortunately, hiring a lawyer to provide that advice is too expensive for many North Carolinians. This is true not just for the poor, but for the "missing middle"—those North Carolinians who earn too much money to qualify for free legal assistance from groups like Legal Aid, but not enough to afford an attorney. To help narrow this gap in access to justice, Plaintiffs Morag Black Polaski and Shawana Almendarez—both charter members of JFAP—want to provide this advice at a lower price than licensed attorneys in the same geographical area. And JFAP wants to provide this advice for free at legal clinics open to the public and through an on-demand video library.

4. Plaintiffs have a First Amendment right to give this advice, and the North Carolinians they would advise have a First Amendment right to hear it. That is because advice—including even expert advice on technical subjects—is speech. That is true regardless of the topic discussed or whether the speaker is paid. It is true regardless of whether that advice is delivered through a book, which is legal in North Carolina, or through one-on-one conversations, which is illegal. And it is true here, for, as one court colorfully put it: "If speaking to clients is not speech, the world is truly upside down." *Otto v. City of Boca Raton*, 981 F.3d 854, 866 (11th Cir. 2020).

5. Because advice is speech within the First Amendment's protection, the government may not prohibit Plaintiffs' advice based on its legal subject matter unless the government can carry its heavy burden under strict scrutiny of showing that North Carolina's UPL prohibition, as applied to pure legal advice, is narrowly tailored to serve a compelling government interest. The government must also show that its interests could not be achieved equally well through less restrictive regulatory schemes—such as limited practice rights for paralegals, as already exists in Arizona and Utah, or simply allowing nonlawyers to give paid legal advice, as is already the case in countries such as England and Wales. Because the government cannot carry that burden, this Court should hold that North Carolina's UPL prohibition is unconstitutional as applied to Plaintiffs' pure legal advice.

**JURISDICTION AND VENUE**

6. Plaintiffs bring this civil rights lawsuit under the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

7. Plaintiffs seek declaratory and injunctive relief against Defendants' future enforcement of North Carolina's UPL statutes, N.C. Gen. Stat. § 84-1 *et seq.*; regulations promulgated under North Carolina's UPL statutes, 27 N.C. Admin. Code 1A.0101 *et seq.*; and Defendants' policies and practices that deny Plaintiffs' ability to provide pure legal advice to others.

8. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

9. Venue lies in this Court under 28 U.S.C. § 1391(b).

**PARTIES**

10. Plaintiff Morag Black Polaski is a charter member of JFAP, a North Carolina Certified Paralegal, and a resident of Jacksonville, North Carolina.

11. Plaintiff Shawana Almendarez is a charter member of JFAP, a North Carolina Certified Paralegal, and a resident of Kannapolis, North Carolina.

12. Plaintiff North Carolina Justice For All Project is a North Carolina unincorporated nonprofit association organized under the Uniform Unincorporated Nonprofit Association Act, N.C. Gen. Stat. § 59B-1 *et seq.* JFAP is headquartered in Raleigh, North Carolina, and has members in Cabarrus, Mecklenburg, New Hanover, Onslow, and Wake Counties.

13. Defendant Ernie Lee is the District Attorney for the 5th Prosecutorial District of North Carolina. He is responsible for the prosecution of crimes in the 5th Judicial District, including Onslow County. He is sued in his official capacity.

14. Defendant Benjamin R. David is the District Attorney for the 6th Prosecutorial District of North Carolina. He is responsible for the prosecution of crimes in the 6th Judicial District, including New Hanover County. He is sued in his official capacity.

15. Defendant Nancy Lorrin Freeman is the District Attorney for the 10th Prosecutorial District of North Carolina. She is responsible for the prosecution of crimes in the 10th Judicial District, including Wake County. She is sued in her official capacity.

16. Defendant Ashlie Stanley is the District Attorney for the 25th Prosecutorial District of North Carolina. She is responsible for the prosecution of crimes in the 25th Judicial District, including Cabarrus County. She is sued in her official capacity.

17. Defendant Spencer Merriweather is the District Attorney for the 26th Prosecutorial District of North Carolina. He is responsible for the prosecution of crimes in the 26th Judicial District, including Mecklenburg County. He is sued in his official capacity.

18. Defendant A. Todd Brown is the President of the North Carolina State Bar and Chair of the Executive Committee of the North Carolina State Bar. In these capacities he is responsible for authorizing the Bar Counsel to initiate legal proceedings to enjoin the unauthorized practice of law. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

### North Carolina's Access to Justice Gap

19. North Carolina faces an "access to justice gap"—a gap between the civil legal needs of lower-income residents and the legal resources available to meet those needs.

20. This access to justice gap leads to significant harm to lower-income North Carolinians. Litigants with legitimate claims may waive or forfeit their legal rights due to a technicality or delay. Unmet civil legal needs can lead to loss of housing, safety concerns, and future criminal problems.

21. In North Carolina, there are just 2.5 attorneys per 1,000 residents, and there is just one legal aid attorney per 7,500 residents. *2023 ABA Profile of the Legal Profession* 21 (2023); *Legal Aid of North Carolina, Inc. Program Profile*, Legal Servs. Corp., https://www.lsc.gov/grants/our-grantees/legal-aid-north-carolina-inc-program-profile.

22. Forty-eight of North Carolina's 100 counties qualify as a "legal desert"—defined as counties with less than one attorney per 1,000 residents. Alicia Mitchell-Mercer, N.C. Just. for All Project, *Looking Beyond Lawyers to Bridge the Civil Access to Justice Gap* 21 (2023). Ten North Carolina counties have fewer than ten attorneys. Camille Stell, *Legal Deserts: A Threat to Justice in Rural North Carolina*, Laws. Mutual (May 11, 2022), https://www.lawyersmutualnc.com/risk-management-resources/articles/legal-deserts-a-threat-to-justice-in-rural-north-carolina.

23. In North Carolina, 46.7% of attorneys are in Wake County and Mecklenburg County, and 63% are in five counties (Wake, Mecklenburg, Guilford, Durham, and Forsyth). Mitchell-Mercer, *supra*, at 21.

24. In a year, 71% of North Carolina's low-income families experience at least one civil legal problem. But 86% of those legal needs go unmet. N.C. Equal Access to Just. Comm'n & N.C. Equal Just. Alliance, *In Pursuit of Justice: An Assessment of the Civil Legal Needs of North Carolina* 3 (2021).

25. The areas of greatest legal need in North Carolina are (in descending order): summary ejectment, divorce, collection on account, domestic violence, foreclosure, custody, findings and order of foreclosure, and permanent civil no-contact order. *Id.* at 6.

26. About 16.9% of North Carolina residents are eligible for assistance from the Legal Aid of North Carolina ("LANC"). The income cutoff for LANC is $18,225 for an individual, or $37,500 for a family of four. *Legal Aid of North Carolina, Inc. Program Profile*, *supra*.

27. Because of budgetary and human resources constraints, LANC can serve only 1 in 10 households needing legal help. Legal Aid of North Carolina, *Annual Report 2018* 7 (2018).

28. And LANC's services are limited to select subject-matter areas. LANC does not handle divorce, summary administration, or small estate administration. *Our Services*, Legal Aid of N.C., https://legalaidnc.org/our-services/.

29. Because of the shortage of free legal services, low-income residents often lack meaningful access to North Carolina courts.

30. The North Carolina access to justice gap also includes the "missing middle"—moderate-income individuals that: (1) are ineligible for legal aid, but (2) lack sufficient disposable income to afford a lawyer.

31. About 26.5% of North Carolinians make up the missing middle. Mitchell-Mercer, *supra*, at 21.

32. Many in the missing middle have the ability pay something for legal services, but they cannot afford the rates that attorneys charge.

33. North Carolina ranks 49th out of 52 states (including Washington, D.C. and Puerto Rico) in access to attorneys for civil legal needs, per the National Center for Access to Justice. *Attorney Access*, Nat'l Ctr. for Access to Just., https://ncaj.org/state-rankings/justice-index/attorney-access.

34. The access to justice gap is not limited to North Carolina. Nationwide, 74% of low-income households experience at least one civil legal problem in a year. Legal Servs. Corp., *The*

*Justice Gap: The Unmet Civil Legal Needs of Low-Income Americans* 32 (2022). Organizations funded by the Legal Services Corporation—a federally established nonprofit—turn away half of all requests for legal help. *Id.* at 9.

35. Internationally, the United States ranks 115th out of 142 countries in affordability and accessibility of civil justice, per the World Justice Project's Rule of Law Index. Out of the "high income" countries, the United States ranks 46th out of 46 countries. *Rule of Law Index*, World Just. Project, https://worldjusticeproject.org/rule-of-law-index/country/2023/United%20States/Civil%20Justice/.

36. In response to the justice gap, several states have enacted regulatory and legislative reforms, including limited licensing programs, regulatory sandboxes, liberalization of UPL, and alternative pathways to bar admission.

37. These nationwide reforms are designed to combat the shortage in legal services and the resulting justice gap by allowing additional—preferably lower-cost—entrants into the legal market.

38. Early studies on limited licensing programs show that the number of complaints concerning harm from limited licensees in these states are no greater than those against lawyers.

39. In 2017, the North Carolina Commission on the Administration of Law and Justice drafted a report recommending that the state consider altering its UPL definition and adding a limited licensing program. These reforms would have created a limited right for nonlawyers to provide legal services that accounted for the "evolving needs and expectations of the public."

40. Since 2017, North Carolina has not enacted a limited licensing program or altered its UPL definition. In 2016, and in response to the *LegalZoom.com v. North Carolina State Bar* lawsuit, the state narrowly exempted website providers offering interactive software for generating legal documents from its UPL definition. *See* N.C. Gen Stat. § 84-2.2.

**The North Carolina Justice for All Project**

41. In late 2020, S.M. Kernodle-Hodges ("Kernodle") and Alicia Mitchell-Mercer founded the North Carolina Justice for All Project: a nonprofit organization dedicated to bridging the access to justice gap.

42. JFAP's team consists of five certified paralegals across North Carolina. All five women have years of experience in the legal industry. All five women have served in leadership positions within the North Carolina Bar Association Paralegal Division. All five women have volunteered their legal services for free over their paralegal careers.

43. JFAP's mission is to promote equality, efficiency, and fairness in the North Carolina legal system.

44. Because of North Carolina's UPL statutes and regulations, JFAP has been unable to narrow the access to justice gap by offering their own free legal services.

45. Instead, JFAP has spent the last three years advocating for nonlawyers to offer limited legal services in areas of high need, particularly family law, landlord-tenant law, and estate planning and probate services.

46. In 2021, JFAP submitted a limited licensing proposal ("2021 proposal") to both the North Carolina Supreme Court and the North Carolina State Bar ("NCSB"). The 2021 proposal called for a second tier of legal service providers that could provide affordable legal help to low- and moderate-income North Carolinians.

47. JFAP's 2021 proposal was modeled after Washington and Utah's limited licensing program. It called for a "legal technician" exception to North Carolina's UPL statutes. These legal technicians would be permitted to assist in select practice areas like family law and landlord-tenant law.

48. JFAP's 2021 proposal compared this "legal technician" exception to exceptions used to combat shortages in medical services, like nurse practitioners and physician assistants.

49. JFAP's 2021 proposal added that 13.6% of North Carolinians are illiterate and cannot advocate for themselves.

50. After presenting JFAP's 2021 proposal to the NCSB, JFAP co-founders Kernodle and Alicia were appointed to NCSB's Issues Subcommittee on Regulatory Change.

51. In January 2022, the NCSB subcommittee published a report unanimously recommending that the NCSB Council develop and implement a limited lawyer licensing program that targets the areas of highest legal need identified in a 2021 North Carolina legal needs assessment. The report recommended that the NCSB Council explore liberalizing North Carolina's UPL statutes to permit nonlawyers to help draft certain documents and provide other limited legal services.

52. In July 2022, the NCSB voted to create an Access to Justice Committee to recommend initiatives and programs that "ensure equal access to our system of justice for all those who, because of economic or social barriers, cannot afford or secure adequate legal counsel." 27 N.C. Admin. Code 1A.0701(a)(9) (quoting the Preamble to North Carolina's Rules of Professional Conduct, 27 N.C. Admin. Code 2.0.1(f))).

53. JFAP proactively contacted the NCSB to see if they could contribute to the new committee. After months of silence, an NCSB representative told JFAP that they would not take part in the Access to Justice Committee.

54. Over several committee meetings, NCSB representatives articulated that they would not pursue initiatives that require legislative approval. Because significant reforms would ultimately require amendments to North Carolina's UPL statutes and regulations, JFAP refocused its advocacy efforts towards the state legislature.

55. In February 2023, following months of NCSB inaction, JFAP submitted a limited licensing proposal ("2023 proposal") to the North Carolina General Assembly. The 2023 proposal recommended: (1) liberalizing UPL for those providing free legal services, and (2) creating limited licenses for legal professionals in areas of high legal need.

56. To date, neither of JFAP's proposals have led to any regulatory reforms.

**Individual Plaintiffs Morag Black Polaski and Shawana Almendarez**

57. Individual plaintiffs Morag Black Polaski and Shawana Almendarez are both charter members of JFAP. They are North Carolina Certified Paralegals with over twenty years of experience as paralegals.

58. Both Morag and Shawana have served in leadership positions in the North Carolina Bar Association Paralegal Division. Morag was Treasurer. Shawana has served in these roles: Government and Public Sector Liaison, Internet & Regulations Liaison, Legal Services Committee Liaison, Treasurer, Secretary, and Chair.

59. Morag labels her expertise in "people law." She has worked in multiple private law firms, mainly in personal injury, debt collection, Social Security disability claims, workers' compensation claims, real estate law, wills, probate, and family law.

60. Over her more than twenty years as a paralegal, Morag has developed extensive familiarity with a wide variety of court-created forms and has filled those forms out countless times under the supervision of a lawyer.

61. Shawana's expertise is in family law and state and local government administration.

62. Shawana worked as a family law paralegal at a nonprofit law center for several years. There, she collaborated with North Carolina's 26th Judicial District to facilitate self-service clinics for absolute divorce. The self-service packets included forms created by the NCAOC.

63. Shawana also worked as the Family Court Case Coordinator for NCAOC. There, she worked as a case manager and aimed to make the court more user-friendly—running the same self-service clinics and handing out information packets.

64. Along with others at NCAOC, Shawana limited her work to providing legal *information*, and she actively avoided providing legal *advice*. As a result, she regularly had to refrain from answering legal questions she knew the answers to, and she regularly saw the frustration this caused for pro se litigants trying to understand how to properly fill in legal forms.

**Plaintiffs' Goal to Provide Simple Legal Advice on Court-Created Forms**

65. With JFAP's legislative efforts to create a limited licensing program and liberalize North Carolina's UPL statutes stalled, Plaintiffs seek to protect their First Amendment right to provide pure legal advice through constitutional litigation.

66. Specifically, Plaintiffs want to provide simple legal advice on a variety of court-created forms in family law, landlord-tenant law, and estate planning and probate services.

67. The North Carolina Judicial Branch (through the NCAOC) offers over one thousand statewide judicial forms and over one thousand local judicial forms on their website for attorneys and pro se litigants to fill out themselves. The website is www.nccourts.gov ("NCAOC website").

68. Plaintiffs are particularly interested in providing legal advice on court-created forms in the following subject-matter areas:

a. Summary ejectment;

b. Absolute divorce;

c. Domestic violence, including domestic violence protective orders;

d. Civil no-contact orders, under North Carolina General Statute §§ 50C-1 *et seq.*, 50D-1 *et seq.*;

e. Child custody and visitation, including motions to modify custody;

f. Summary administration, testate or intestate; and

g. Small estate administration.

69. These subject-matter areas align with several of the areas of highest legal need identified in the 2021 North Carolina legal needs assessment.

70. The NCAOC website provides statewide forms for all these subject-matter areas. Each of these forms has a searchable form number. They can be found at www.nccourts.gov/documents/forms.

71. Additionally, the NCAOC website provides packets, guidelines, or landing pages for all these subject-matter areas. These packets, guidelines, and webpages group up the relevant forms and briefly discuss how the forms relate to each other.

72. And since 2020, the NCAOC website maintains a "Guide & File" system for attorneys and pro se litigants. This system guides lawyers and pro se litigants through a series of prompts related to select subject-matter areas. The system then generates the appropriate legal documents with the provided information. These documents can be printed and—in a few counties—electronically filed.

73. The Guide & File system provides prompts in all these subject matter areas except civil no-contact orders.

74. The NCAOC website's resources, including most packets and the Guide & File system, append disclaimers that state they are legal *information*, not legal *advice*.

75. Additionally, the Guide & File system states: "**Use this interview at your own risk!** This interview is designed to help you. Because you do not have a lawyer, it is *your* job to make sure the forms and information you file to the Court are correct and complete."

76. According to the North Carolina Equal Access to Justice Commission, as of 2021, there is an 80% drop off between the number of Guide & File users and the number of users that make it through to the end of the system's prompts (and thus generate a file).

77. Plaintiffs have seen, worked with, and filled out at least some of these court-created forms over the course of their paralegal careers. But under North Carolina's UPL statutes and regulations, they have only been able to work on these forms under the supervision of a licensed attorney.

78. Based on Plaintiffs' experience with these forms, many North Carolina residents have a legitimate, civil legal need, but due to the emotional turmoil of their situations and lack of familiarity with the procedures, they cannot fill out the forms timely or correctly.

79. Based on Plaintiffs' experience with these forms, some of these forms have terms that ordinary laypeople would not understand without prior exposure, like "implied warranty of habitability" and "right of survivorship."

80. Based on Plaintiffs' experiences with these forms, most traditional, licensed attorneys do not offer or advertise a narrow legal service to provide legal advice on these court-created forms for pro se litigants.

81. Based on Plaintiffs' experience with these forms, many North Carolina residents either do not understand these forms or fill them out incorrectly. Consequently, many cannot obtain meaningful access to the courts or defend their legal rights.

82. Based on Plaintiffs' experience, with guidance from someone familiar with these forms, these forms can often be filled out in under an hour. At minimum, they are easily explainable to laypeople.

83. Based on Plaintiffs' experience with these forms, it only takes a matter of hours of exposure and training for paralegals and other nonlawyer providers to become comfortable with them.

84. Plaintiffs want to advise North Carolinians about these court-created forms at clinics. This advice would go beyond basic legal information. It would include guidance on what each form does, how the forms interact, what certain terms mean, what local court rules to know, what forms to file, and what information to include on the forms.

85. Plaintiffs also want to offer legal advice specific to these court-created forms online through an on-demand video library. These videos would explain how to prepare the court-created forms in greater detail than the NCAOC website's resources.

86. Plaintiffs' legal advice would be tailored to the litigant's factual circumstances and legal goals.

87. In providing this legal advice, Plaintiffs would not hold themselves out as attorneys. As needed to prevent confusion, they would explain their legal certifications, experiences, and expertise.

88. Some JFAP members have already—under the supervision of a licensed attorney and consistent with North Carolina law—trained law students and paralegals to advise North Carolina residents on these types of forms.

**Plaintiffs Want to Provide Both Free and Paid Advice**

89. Plaintiff JFAP would like to offer this advice at clinics open to the public. At these clinics, a JFAP member—such as Plaintiffs Morag or Shawana—would provide advice for free.

90. Outside of these clinics, Morag and Shawana would also like to provide the same advice for a fee.

91. The fees they would charge would track their experience and the complexity and time of the work. These fees would be lower than the hourly rates charged by licensed attorneys in the same geographical area.

92. Plaintiffs believe that expanding the availability of paid legal advice is a necessary component of ensuring access to justice. They believe free advice, though helpful and necessary for low-income individuals, is not enough to narrow the access to justice gap alone.

93. Payment for legal advice encourages others to provide legal advice, reducing the ongoing shortage of legal services available to both low- and moderate-income individuals.

94. Expanding the availability of paid legal advice is vital to narrowing the access to justice gap for the missing middle because they are ineligible for North Carolina legal aid.

95. The current options for the missing middle for seeking legal advice are: (1) hiring an attorney, or (2) receiving no help at all.

96. Plaintiffs believe that Morag and Shawana should be able to receive payment for the work and expertise they offer.

97. Like with their free legal advice through JFAP, Morag and Shawana would not hold themselves out as attorneys. They would explain their legal certifications, experiences, and expertise as necessary to prevent confusion.

**North Carolina's Total Ban on Free and Paid Legal Advice by Nonlawyers**

98. Plaintiffs are prohibited from providing simple advice—whether for free or for pay—because they are not lawyers, and providing legal advice about how to fill out court-created forms would thus be a criminal offense under North Carolina's UPL statutes.

99. Licensed lawyers have a state-created monopoly on the provision of legal advice in North Carolina.

100. North Carolina's UPL statutes apply to all advice on legal matters, paid and unpaid.

101. North Carolina General Statute § 84-2.1 defines the phrase "practice law" as "performing *any* legal service for *any* other person." (emphasis added).

102. Section 84-2.1 provides several examples that constitute UPL, including "assisting by advice, counsel, or otherwise in any legal work" and "advis[ing] or giv[ing] opinion upon the legal rights of any person."

103. Section 84-2.1 specifies that it applies to both compensated and uncompensated legal services.

104. Similarly, § 84-4 prohibits all unlicensed persons from "giv[ing] legal advice or counsel" or "prepar[ing] . . . any other legal document," regardless of compensation.

105. The NCSB has published "Guidelines for Use of Paralegal in Rendering Legal Services" ("the Guidelines"). The Guidelines are attached as Exhibit A.

106. Citing both §§ 84-2.1 and 84-4, the Guidelines read: "**A lawyer shall not permit a paralegal to engage in the practice of law. To this end, a lawyer may not delegate the following responsibilities . . . giving oral or written legal advice or a legal opinion to a client** . . . ." The Guidelines add that a paralegal may not give legal advice no matter their level of competence.

107. The NCSB also publicizes a list of frequently asked questions on the applicability of North Carolina's UPL statutes ("UPL FAQs"). These UPL FAQs are attached as Exhibit B.

108. The UPL FAQs state that a nonlawyer engages in UPL regardless of the relationship between the two parties or whether the nonlawyer charges for her advice.

109. Separately, the NCSB lists some questions and answers on the "Reporting and Preventing the Unauthorized Practice of Law" tab of their website.

110. Under this tab, the NCSB confirms that nonlawyers cannot fill out legal forms, "especially if the assistance involves helping you understand what needs to be filled in, advising you of the consequences of completing the form in a certain manner, or otherwise providing legal advice concerning the completion of the form. Additionally, advising a person that a particular legal form is appropriate for the person's legal needs is legal advice that may not be given by a nonlawyer."

111. Violators of North Carolina's UPL statutes are guilty of a Class 1 misdemeanor and face a criminal penalty of up to 120 days in jail. *Id.* § 84-8. District Attorneys are required to prosecute violators of North Carolina's UPL statutes. *Id.* § 84-7.

112. In addition to criminal prosecution by district attorneys, the NCSB is tasked with civil prosecution of North Carolina's UPL statutes. *Id.* § 84-37.

113. Defendant Brown, as the NCSB's President and as Chair of the Executive Committee of the North Carolina State Bar, may authorize the Bar Counsel to initiate legal proceedings seeking both temporary and permanent injunctive relief to enjoin violators from providing legal advice. 27 N.C. Admin. Code 1D.0208(b), (e).

114. North Carolina's UPL statutes exempt certain speakers from prosecution for practicing law without a license.

115. Section 84-2.1 lists three classes of speakers:

a. "The drafting or writing of memoranda of understanding or other mediation summaries by mediators at community mediation centers authorized by G.S. 7A-

38.5 or by mediators of employment-related matters for The University of North Carolina or a constituent institution, or for an agency, commission, or board of the State of North Carolina."

b. "The selection or completion of a preprinted form by a real estate broker licensed under Chapter 93A of the General Statutes, when the broker is acting as an agent in a real estate transaction and in accordance with rules adopted by the North Carolina Real Estate Commission, or the selection or completion of a preprinted residential lease agreement by any person or Web site provider."

c. "The completion of or assisting a consumer in the completion of various agreements, contracts, forms, and other documents related to the sale or lease of a motor vehicle as defined in G.S. 20-286(10), or of products or services ancillary or related to the sale or lease of a motor vehicle, by a motor vehicle dealer licensed under Article 12 of Chapter 20 of the General Statutes."

116. North Carolina's UPL statutes also exempt:

a. website providers "offer[ing] consumers access to interactive software that generates a legal document based on the consumer's answers to questions," *id.* § 84-2.2(a);

b. "banking corporation[s] . . . performing ministerial and clerical acts in the preparation and filing of [] tax returns . . . ," *id.* § 84-5;

c. law school clinics advising or serving clients for free, *id.* § 84-7.1(1); or

d. law students interning for a law school clinic or a government agency, *id.* § 84-7.1(1–2).

117. Separately, federal law permits certain nonlawyers to provide limited legal advice or representation in various federal courts and agency hearings. These exemptions include nonlawyers advising or representing: social security claimants before the Social Security Administration, veterans benefits claimants before the Department of Veterans Affairs, individuals

before immigration courts and the Board of Immigration Appeals, individuals in patent cases before the United States Patent and Trademark Office, and individuals before the Federal Labor Relations Authority.

118. None of the exceptions in ¶¶ 114–17 apply to Plaintiffs as speakers or the advice they wish to provide.

119. More generally, North Carolina's UPL statutes do not apply to pro se litigants. North Carolina's UPL statutes only apply to a person who tries to represent others, or a person who tries to provide legal advice to others so they can ultimately represent themselves.

120. The NCSB's UPL FAQs clarify: "An individual may represent him or herself on any legal matter. A person commits the unauthorized practice of law only by performing acts constituting the practice of law for another person or entity."

121. Under North Carolina law, litigants can fill out the court-created forms on their own. They can use the Guide & File system or other interactive software to assist if it covers their unmet civil legal need. But they cannot seek advice from unlicensed legal professionals to ensure they fill out the forms correctly.

122. The NCAOC's Guide & File system has a "Disclaimers" page that further confirms that only lawyers may advise a pro se litigant regarding court-created forms. A copy of that disclaimers page is attached as Exhibit C.

123. As the NCAOC's Guide & File system summarizes on its "Disclaimers" page:

a. "If you have **questions** about your case or need **legal advice**, talk to **a lawyer**."

b. "**Only Lawyers Can Explain Your Legal Rights**."

c. "This Interview **cannot** tell you if or what you should file."

d. "For advice about your particular case, **talk to a lawyer**."

124. The language of North Carolina's UPL statutes and regulations, as well as North Carolina's guidance and interpretations of those laws, confirms that Plaintiffs are legally prohibited from giving legal advice on how to properly fill out court-created forms.

125. In North Carolina, the only way for Plaintiffs to give simple legal advice on these court-created forms would be to attend three years of law school, pass the Multistate Professional Responsibility Exam, pay a bar application fee ranging from $850 to $1,650, sit for and pass the bar exam, meet certain character and fitness requirements, pay other licensing fees, and abide by North Carolina's continuing legal education requirements.

**INJURY TO PLAINTIFFS**

126. If Plaintiffs provide legal advice without first becoming fully licensed North Carolina attorneys, they face a credible threat of prosecution by Defendants.

127. Because of Defendants' credible threat of prosecution, Plaintiffs have self-censored. In their legal careers and advocacy on behalf of JFAP, they have refrained from providing legal advice that they knew to be accurate and knew would help a person they were assisting.

128. Because of Defendant's credible threat of prosecution, Plaintiffs have had to turn down requests for legal advice from friends and family.

129. Because of Defendants' credible threat of prosecution, Plaintiffs have only provided legal advice under the supervisory authority of an attorney, or for Social Security claimants as permitted by federal law.

130. Defendants' credible threat of prosecution has chilled and silenced Plaintiffs' pure legal speech.

131. Because of Defendants' credible threat of prosecution, Plaintiffs are constantly concerned that a person with an unmet civil legal need will lose their legal rights, wanting their advice and assistance, without having had an opportunity to consult them.

132. Because of Defendants' credible threat of prosecution, Plaintiff JFAP has been unable to further or fulfill its mission to promote equality, efficiency, and fairness in the North Carolina legal system.

133. Because of Defendants' credible threat of prosecution, Plaintiff JFAP has been and will remain unable to narrow the access to justice gap by offering its own free legal advice. Nor have Plaintiffs Morag and Shawana been able to offer the same at a lower cost.

134. Because of Defendants' credible threat of prosecution, Plaintiff JFAP has had to and will continue to have to divert their financial resources and time into educational and advocacy efforts, including writing multiple legislative proposals, attending national and statewide conferences, and serving on various associations and commissions, rather than assisting North Carolinians directly.

135. Because of Defendants' credible threat of prosecution, Plaintiffs Morag and Shawana have lost and will continue to lose the opportunity to provide useful legal advice to North Carolinians.

136. Because of Defendants' credible threat of prosecution, Plaintiffs Morag and Shawana have lost and will continue to lose the opportunity to earn money for providing useful legal advice to North Carolinians.

137. But for North Carolina's UPL statutes and regulations, Plaintiffs would not have to choose between not helping North Carolina residents who need them and risking criminal and civil enforcement.

138. But for North Carolina's UPL statutes and regulations, JFAP would commit significant resources to giving free legal advice, both at clinics open to the public and an on-demand video library.

139. But for North Carolina's UPL statutes and regulations, Plaintiffs Morag and Shawana would offer the same legal advice services through their own freelance business structures.

## CAUSE OF ACTION

**COUNT I**
**42 U.S.C. § 1983 – First Amendment**
**(Plaintiffs' Right to Provide Free Legal Advice)**

140. Paragraphs 1 through 139 are incorporated as though fully set forth herein.

141. Plaintiffs challenge North Carolina's UPL laws solely as applied to legal advice regarding court-created forms.

142. Plaintiffs' advice regarding court-created forms is pure speech, not a form of occupational conduct of which speech is only an incidental part.

143. Plaintiffs are not challenging the application of North Carolina's UPL laws to the non-communicative aspects of legal work, such as the handling of client funds.

144. Plaintiffs are not challenging the application of North Carolina's UPL laws to speech having an independent legal effect, such as acting as an agent with the authority to make legally binding admissions or create legally binding obligations for another party.

145. Plaintiffs are not challenging the application of North Carolina's UPL laws to speech in courtrooms or other government-created forums—such as arguing on behalf of another in court or calling and examining witnesses—that have historically been subject to regulation.

146. The First Amendment's Free Speech Clause fully protects Plaintiffs' oral and written legal advice regarding North Carolina's court-created forms.

147. North Carolina's UPL statutes, as applied to Plaintiffs' communications with North Carolinians, are content-based prohibitions of pure speech.

148. Defendants lack a substantial or compelling interest in preventing people like Morag and Shawana and organizations like JFAP from sharing important and useful knowledge about court-created forms.

149. Requiring the individual Plaintiffs or JFAP's members to go to law school for three years and sit for the bar exam before they can lawfully advise others about simple, court-created forms is not a narrowly tailored means of advancing any sufficiently important or compelling

government interest. Nor do those requirements satisfy any other level of First Amendment tailoring.

150. Any interest the state has could be adequately served by less-speech-restrictive alternatives.

151. Other states' regulatory schemes providing limited practice rights for paralegals, such as in Arizona and Utah, show the existence of plausible regulatory alternatives short of a total speech ban for nonlawyers.

152. Other countries' regulatory schemes allowing for the provision of legal advice by nonlawyers, such as in England and Wales, show the existence of plausible regulatory alternatives short of a total speech ban for nonlawyers.

153. Defendants cannot demonstrate that these plausible regulatory alternatives would not adequately serve any interest they may allege.

154. Defendants' enforcement of the challenged statutes, regulations, policies, and practices to suppress Plaintiffs' speech rights cannot withstand any level of First Amendment scrutiny.

**COUNT II**
**42 U.S.C. § 1983 – First Amendment**
**(Plaintiffs Morag and Shawana's Right to Provide Paid Legal Advice)**

155. Paragraphs 1 through 139 are incorporated as though fully set forth herein.

156. Besides providing free legal advice through JFAP's clinics, Plaintiffs Morag and Shawana would like to individually provide the same advice for compensation.

157. As recognized by the Supreme Court of the United States, "It is well settled that a speaker's [First Amendment] rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak." *Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 801 (1988).

158. Plaintiffs challenge North Carolina's UPL laws solely as applied to legal advice regarding court-created forms.

159. Plaintiffs' advice regarding court-created forms is pure speech, not a form of occupational conduct of which speech is only an incidental part.

160. Plaintiffs are not challenging the application of North Carolina's UPL laws to the non-communicative aspects of legal work, such as the handling of client funds.

161. Plaintiffs are not challenging the application of North Carolina's UPL laws to speech having an independent legal effect, such as acting as an agent with the authority to make legally binding admissions or create legally binding obligations for another party.

162. Plaintiffs are not challenging the application of North Carolina's UPL laws to speech in courtrooms or other government-created forums—such as arguing on behalf of another in court or calling and examining witnesses—that have historically been subject to regulation.

163. The First Amendment's Free Speech Clause fully protects Plaintiffs' oral and written legal advice related to North Carolina's court-created forms.

164. North Carolina's UPL statutes, as applied to Plaintiffs' communications with North Carolinians, are content-based prohibitions of pure speech.

165. Just as Defendants lack a substantial or compelling interest in silencing JFAP or its members from providing free legal advice regarding court-created forms, Defendants equally lack a substantial or compelling interest in silencing Plaintiffs Morag and Shawana from providing the same advice for a fee.

166. Requiring the individual Plaintiffs to go to law school for three years and sit for the bar exam before they can lawfully advise others for pay about simple, court-created forms is not a narrowly tailored means of advancing any sufficiently important or compelling government interest. Nor do those requirements satisfy any other level of First Amendment tailoring.

167. Any interest the state has could be adequately served by less-speech-restrictive alternatives.

168. Other states' regulatory schemes providing limited practice rights for paralegals, such as in Arizona and Utah, show the existence of plausible regulatory alternatives short of a total speech ban for nonlawyers.

169. Other countries' regulatory schemes allowing for the provision of legal advice for pay by nonlawyers, such as in England and Wales, show the existence of plausible regulatory alternatives short of a total speech ban for nonlawyers.

170. Defendants cannot demonstrate that these plausible regulatory alternatives would not adequately serve any interest they may allege.

171. Defendants' enforcement of the challenged statutes, regulations, policies, and practices to suppress Plaintiffs Morag and Shawana's speech rights cannot withstand any level of First Amendment scrutiny.

**REQUEST FOR RELIEF**

Plaintiffs requests the following relief:

A. A declaration that Defendants' enforcement of North Carolina's UPL statutes and regulations violates the First Amendment as applied to Plaintiffs, both for free and compensated legal advice regarding court-created forms;

B. A permanent injunction enjoining future enforcement of North Carolina's UPL statutes and regulations as applied to Plaintiffs free and compensated legal advice regarding court-created forms;

C. Attorney's fees and costs; and

D. Any other relief that the Court deems appropriate.

Respectfully submitted this 18th day of March, 2024.


/s/ Vince Eisinger
Vince Eisinger
North Carolina Bar No. 57646
CRANFILL SUMNER LLP
5420 Wade Park Blvd., Suite 300
Raleigh, NC 27607
Phone: (919) 863-8703
Fax: (919) 863-3459
Email: veisinger@cshlaw.com

*Local Civil Rule 83.1(d)*
*Attorney for Plaintiffs*

/s/ Paul M. Sherman
Paul M. Sherman*
Virginia Bar No. 73410
Christian W. Lansinger*
Maryland Bar No. 2211290007
INSTITUTE FOR JUSTICE
901 North Glebe Rd., Suite 900
Arlington, VA 22203
Phone: (703) 682-9320
Fax: (703) 682-9321
Email: psherman@ij.org
clansinger@ij.org

**Special Appearance pursuant to Local Rule 83.1(e)*

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2024, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system.

I hereby further certify that the foregoing document will be dispatched to a third-party process server for service on all named Defendants.

Dated: March 18, 2024

/s/ Paul M. Sherman
Paul M. Sherman*
**Special Appearance pursuant to Local Rule 83.1(e)*

*Attorney for Plaintiffs*